**Sharon VATER**

v.

**HB GROUP.**

**No. 94–293–M.P.**

Supreme Court of Rhode Island.

Dec. 4, 1995.

Robert Ferrieri, Providence, for Plaintiff.

James A. Currier, Providence, for Defendant.

## OPINION

MURRAY, Justice.

This case came before us on the petition for certiorari of the employee, Sharon Vater (Vater). The employee seeks review of a decree of the Appellate Division of the Workers' Compensation Court reversing the trial judge's decision directing the employer, HB Group, to pay Vater "compensation for partial disablement in the amount of twenty-five (25%) percent from August 3, 1992 and continuing in accordance with the provisions of the Workers' Compensation Act." We quash the decree of the Appellate Division.

The facts of the case are not in dispute. Vater testified that she had worked for HB Group as a line packer for three months until August 5, 1992. Her job duties at HB Group included packing photo albums and picture frames into boxes, lifting these boxes, which weighed a maximum of eighty pounds, and putting them on skids. On August 5, 1992, she stopped working for HB Group because her right forearm hurt. She went to the Landmark Medical Center on that date where she was given a wrap-around splint.

Approximately one week later, she commenced treatment with Harvey Baumann, M.D., a hand specialist. Doctor Baumann diagnosed her as having right carpal tunnel syndrome.

Before August 1992 Vater had had continuous problems with her right forearm which commenced in April 1990, while working for Kidde Fenwal in Ashland, Massachusetts. At Kidde Fenwal, she assembled thermostats and probes, filling them with epoxy. She used squeeze bottles until the last few months at Kidde Fenwal when she switched over to using air guns with foot pedals. At times, she would work on approximately 500 pieces or more per day, depending on the number of orders Kidde Fenwal received per day. In August 1990 Vater was assembling probes which were fitted improperly. Her right hand began to hurt, and she sought medical treatment with Coleman Levin, M.D., the company doctor. Doctor Levin treated her for several months. She did not, however, miss any time from work. She worked for Kidde Fenwal for one year until she was laid off.

In February 1991 she worked at Gem Electronics in Franklin, Massachusetts. In May 1991 she worked at Brine Sports Screen in Hopedale, Massachusetts, where she assembled lacrosse equipment. She then worked at Potpourri Collections in Medfield, Massachusetts, where she operated a heat press and placed monograms on shirts. She denied taking time off from any of these jobs as a result of the pain in her right arm. In December 1991 Vater was laid off from Potpourri Collections, and in January 1992 she returned to Brine Sports Screen. She continued working at Brine Sports Screen for three months, and in May 1992 she began her employment with HB Group. She has not worked anywhere since leaving HB Group on August 5, 1992.

After Vater ceased her employment with HB Group, she filed a petition for workers' compensation benefits, alleging an injury to her right hand and right wrist resulting from repetitive use. The trial court granted benefits to Vater on the basis that Vater had sustained a disablement arising out of and in

the course of her employment with HB Group. The trial court further found that Vater's disablement was defined as right carpal tunnel syndrome and was due to "causes and conditions which are characteristic of and peculiar to the particular trade, occupation, process or employment of the employee." HB Group thereafter appealed the trial court's decision to the Appellate Division. The Appellate Division reversed the trial court's decision and found that "there was insufficient evidence for the Court to determine that the employee's disability was caused by the cumulative effects of working for any employers subsequent to working for [Kidde] Fenwal." In response Vater filed a petition for the issuance of a writ of certiorari, which was granted by this court on September 19, 1994.

Vater raises two issues on review. First, Vater argues that because her injury is characterized as an occupational disease arising from any cause connected with or arising from the peculiar characteristics of her employment pursuant to G.L.1956 (1986 Reenactment) §§ 28–34–1 and 28–34–2, she is entitled to compensation pursuant to § 28–34–3. Second, Vater contends that the trial judge misconstrued the law when he apportioned liability among her prior employers. Although the issue of apportionment was on appeal before the Appellate Division, the Appellate Division did not address the issue as it reversed the trial court's decision on HB Group's liability and ordered Vater's petition be dismissed.

At the outset it should be noted that chapter 34 of title 28 was enacted "in order to protect the worker who was exposed to conditions that resulted in disability because of an occupational disease." *Tavares v. A.C. & S. Inc.*, 462 A.2d 977, 979 (R.I.1983). The Legislature "recognized that an occupational disease is set apart from accidental injuries in that it is not unexpected—because it is incident to a particular employment—and it is gradual in development." *Id.* Accordingly, § 28–34–1(3) defines the term "occupational disease" as a "disease which is due to causes and conditions which are characteristic of and peculiar to a particular trade, occupation, process or employment." Dis-

ability "arising from any cause connected with or arising from the peculiar characteristics of the employment" is listed in § 28–34–2(33) as a compensable occupational disease and is therefore treated as a personal injury. Section 28–34–2. Moreover, § 28–34–3 and § 28–34–4, as amended by P.L.1992, ch. 31, § 12, provide that a disabled employee is entitled to compensation if the occupational disease is due to the nature of the employment and was contracted within that employment.

■ In the present case Vater argues that her disablement resulted from an occupational disease arising from the peculiar characteristics of her employment with HB Group. Specifically, Vater contends that it was the repetitive motion of her right arm, characteristic of her job duties with HB Group, which caused the carpal tunnel syndrome to her right arm. The Appellate Division, however, found that "[a]lthough this injury presents itself as an occupational disease, there was insufficient evidence for the court to determine that the employee's disability was caused by the cumulative effects of working for any employers subsequent to working for Fenwal." It is unclear whether the Appellate Division found that Vater's injury is an occupational injury. However, a finding that Vater's injury does not constitute an occupational injury is clearly unsubstantiated by the record. The record supports the trial judge's conclusion that Vater's injury is an occupational type of injury and that her injury was caused by the repetitive type of motion characteristic to her employment with HB Group in 1992.

It should first be noted that at the hearing Vater denied any trauma to her right hand and right arm or forearm prior to or subsequent to April of 1990. She testified that she had never banged her right arm, right forearm, or right hand since April of 1990 when she first noticed pain in that area. Doctor Baumann testified that upon examining Vater in August of 1992, he diagnosed her injury as right carpal tunnel syndrome. Doctor Baumann further testified that "this would finally explain the difficulties that [Vater] had been having since I guess April or so of 1990, [and 19]91." This diagnosis is

supported by medical reports and affidavits submitted by Vater. Specifically, William J. Golini, M.D., concluded, in his report dated September 3, 1992, that Vater's "abnormal EMG [electromyogram] and nerve conduction study demonstrat[es] a right sided carpal tunnel syndrome." Moreover, Douglas Howard, M.D., in a report dated February 12, 1993, suggested that Vater suffers from carpal tunnel syndrome in her right arm and recommended that she obtain an electromyogram.

In addition, Dr. Baumann testified at the hearing that Vater's injury was caused by a repetitive type of motion. This testimony was corroborated in Dr. Baumann's report dated November 23, 1992, in which he stated that the carpal tunnel syndrome was causally related to the type of work that Vater did. Doctor Baumann did not state that one specific event caused Vater's injury. Rather Vater's injury was caused by the repetitive type of motion consistent with her job duties at HB Group. We therefore believe that the only reasonable conclusion open to the trial judge and the Appellate Division, relying upon the record, was that Vater's injury constitutes an occupational injury pursuant to chapter 34 of title 28. *See Johnson v. State,* 634 A.2d 863, 865 (R.I.1993) ("we have noted that a question of law is presented when the facts, as determined by a trial judge or the appellate division, permit reasonable men to draw only one conclusion"). While it is unusual to reverse an Appellate Division's decision in factual matters, we feel that a reversal is warranted in this case based upon the evidence presented during the hearing.

■ Vater next argues that the trial judge erred in concluding that HB Group was only liable for 25 percent of her total compensation. She argues that because HB Group did not petition for an apportionment of benefits as required by § 28–34–8, as amended by P.L.1990, ch. 332, art. 1, § 4, the trial judge erred by finding that HB Group is only responsible for a portion of her total compensation. Section 28–34–8 provides, in pertinent part, that:

"The total compensation due shall be recovered from the employer who last employed the employee in the employment to the nature of which the disease was due and in which it was contracted. If, however, the disease was contracted while the employee was in the employment of a prior employer, the employer who is made liable for the total compensation as provided by this section, may petition the workers' compensation court for an apportionment of the compensation among the several employers who since the contraction of the disease shall have employed the employee in the employment to the nature of which the disease was due."

However, the Workers' Compensation Act further provides that "[t]he employee * * * if so requested, shall furnish the last employer or the director or the workers' compensation court with such information as to the names and addresses of all his or her other employers during the twenty-four (24) months * * * and * * * if that information * * * is not sufficient to enable the last employer to take proceedings against the other employers under § 28–34–8, the last employer shall be liable only for that part of the total compensation as under the particular circumstances the workers' compensation court may deem just." Section 28–34–10, as amended by P.L.1990, ch. 332, art. 1, § 4.

In the present case the trial justice found that Vater's "prior employers are outside of the State and not subject to our jurisdiction." In these circumstances the trial justice concluded that "[t]he part of compensation which is the responsibility of the HB Group (the last employer) is governed by § 28–34–10" and that "the disablement which is the responsibility of the last employer (HB Group) is only for that part of the total compensation that the evidence of this case may deem just, that is twenty-five (25%) percent." The trial justice therefore exercised his discretion under § 28–34–10 and found HB Group responsible for a portion of Vater's total compensation.

It should be noted that neither party discussed the applicability of § 28–34–10 to the issue of apportionment in the present case, either on appeal to the Appellate Division or on appeal to this court. Upon our examination of § 28–34–10, we conclude that the trial judge was aware that he had the responsibili-

ty under § 28–34–10 to make the apportionment which he deemed just.

For the reasons stated herein, the petition for certiorari is granted. The decree of the Appellate Division is quashed. The papers in this case are remanded to the Appellate Division with our opinion endorsed thereon and with directions to affirm the decision of the trial judge.