**Jeanne ROSSI**

v.

**EMPLOYEES' RETIREMENT SYSTEM of the State of Rhode Island et al.**

No. 2004–364–M.P.

Supreme Court of Rhode Island.

April 13, 2006.

---

Kenneth Haupt, Providence, Esq., for Plaintiff.

William E. O'Gara, Esq., Providence, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice FLAHERTY, for the Court.

The petitioner, Jeanne Rossi, seeks review of a Superior Court judgment that affirmed the denial of her application for an accidental disability pension. In 1992, Rossi was injured while working at the

Rhode Island Training School, a correctional facility for juvenile offenders. She resumed work in 1999, but began to suffer headaches and debilitating pain in her neck, back, and shoulders—that she claimed were related to her 1992 injury. Pursuant to G.L.1956 § 36–10–14, Rossi applied for accidental disability retirement. The respondent, Employees' Retirement System Board (retirement board or board), denied her application because she was unable to identify a specific incident that aggravated her 1992 injury. After exhausting the administrative appeal process, Rossi filed a complaint in the Superior Court, but a justice of that tribunal affirmed the board's decision.

Seeking a review of the Superior Court's decision, Rossi then petitioned this Court for a writ of certiorari, which we granted on April 15, 2005. For the reasons set forth herein, we quash the judgment of the Superior Court and remand the case to the retirement board with instructions to conduct a hearing on Rossi's application for a disability pension consistent with this opinion.

# I

## Factual Background

On April 18, 1992, Rossi was working as a juvenile program worker at the training school when she attempted to stop one of the juvenile residents from escaping. During the ensuing melee, she was struck in the face with a heavy gate and sustained injuries, which included a broken nose, broken teeth, and injuries to her neck and back. Because of her injuries, Rossi was unable to go back to work until June 11, 1999.

When Rossi finally resumed employment, she did so in a light-duty capacity because her neck was still fragile from the 1992 injury. Her new position, in the facil-

ity's control center, required her to view closed-circuit television monitors and control the opening and closing of gates to ensure that the facility remained secure. Much of Rossi's work day was spent standing and looking up toward the monitors that were positioned above her head. She also had to reach for the buttons that controlled the various security gates. In time, Rossi began to experience pain in her neck, shoulders, and arms, and to suffer severe headaches, symptoms that she believed were the result of constantly looking up and stretching her arms and neck. She took ibuprofen to cope with her pain and continued to work, even though her pain was becoming increasingly difficult to bear.

On June 23, 2000, approximately one year after resuming work, Rossi's condition had worsened to a point where she felt she no longer could function in her job. She filled out an injury report describing her condition, stating that she was experiencing headaches as well as pain in her neck that radiated to her arms, wrists, and back. In response to a question asking her to describe the incident causing her injury, she wrote that "[t]here wasn't one specific incident," and that "[t]he problem had developed over a period of time."

Pursuant to § 36–10–14, Rossi filed an application to receive an accidental disability pension on February 20, 2002. Consistent with the application process, the retirement board directed Rossi to be examined by three independent physicians of its choosing. Doctor William S. Buonanno examined Rossi and opined that her condition was related to the 1992 accident and that the subsequent aggravation was brought on when she returned to work. He also said that it was unlikely that her condition would improve and that she could not resume her normal duties at work. This opinion was mirrored by that

of Dr. Kenneth J. Morrissey, who also examined Rossi at the behest of the retirement board. Like Dr. Buonanno, Dr. Morrissey concluded that Rossi's condition emanated from the 1992 accident and that she had aggravated the condition when she returned to work. He opined that Rossi might be able to resume work in a different capacity, but that she was "permanently disabled" from doing her normal job. The third and final examining physician, Dr. William F. Garrahan, reported that Rossi appeared to have "residual complaints with the cervical spine injury sustained in 1992." He surmised, however, that Rossi might be able to resume work in a different capacity, and his report indicated that Rossi was "not completely disabled, just merely disabled from physical contact."

With these medical reports in hand, the retirement board's disability subcommittee reviewed Rossi's application and concluded that she did not qualify for an accidental disability pension. In a written decision dated July 9, 2002, the subcommittee noted that "Rossi does not identify any specific incident that caused the aggravation or reinjury of her condition upon returning to work." The subcommittee concluded its decision by stating:

> "Rossi did not file an application within five years of the 1992 incident involving an attempted escape by a juvenile. Therefore, in order to qualify for an accidental disability pension, Rossi must demonstrate that she applied within three years of reinjuring or aggravating that injury. After a thorough review of the medical reports of three independent physicians and the other materials sub-

mitted by Rossi, the subcommittee concludes that there is no evidence that Rossi sustained an aggravation or reinjury within three years of the filing of this application. Therefore, her application for an Accidental Disability Pension is denied."

After the disability subcommittee denied a request for reconsideration, Rossi appealed to the retirement board. A hearing was conducted on May 14, 2003, and much of the questioning focused on Rossi's inability to identify a specific incident that aggravated her 1992 injury.[1] The board noted that § 36–10–14 requires a specific incident because otherwise it would be impossible to determine when the statute of limitations for filing a claim begins to run. After hearing Rossi's testimony and considering the arguments of counsel, the board unanimously voted to affirm the denial of her claim.

Rossi next appealed to the Superior Court, seeking review of the board's decision in accordance with the Administrative Procedures Act, as set forth in G.L.1956 § 42–35–15. Despite a finding that "the evidence clearly demonstrates that Rossi is suffering from a disability," the court nevertheless affirmed the retirement board's decision because Rossi was unable to identify a specific incident causing aggravation of the 1992 injury.

## II

### Standard of Review

The Superior Court's review of an administrative decision is governed by the Administrative Procedures Act. Section 42–35–15(g) of the act provides that:

---

1. For example, an attorney for the retirement board posed the following question to Rossi: "[I]s it your testimony here today that the reason that you filled this [form] out, the accident report out stating that there wasn't one incident, it's your testimony today that it's the normal rigors of the job of turning and looking and having to do the normal functions for which that were needed to perform the job that caused the injury?"

"The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

"(1) In violation of constitutional or statutory provisions;

"(2) In excess of the statutory authority of the agency;

"(3) Made upon unlawful procedure;

"(4) Affected by other error or law;

"(5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

"(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."

■■■■ When this Court reviews the judgment of the Superior Court in administrative proceedings, our review is limited to questions of law. Section 42–35–16 ("Review by supreme court"); *Johnston Ambulatory Surgical Associates, Ltd. v. Nolan,* 755 A.2d 799, 805 (R.I.2000). "Questions of law determined by the administrative agency are not binding upon us and may be freely reviewed to determine the relevant law and its applicability to the facts presented in the record." *State Department of Environmental Management v. State Labor Relations Board,* 799 A.2d 274, 277 (R.I.2002) (citing *Carmody v. Rhode Island Conflict of Interest Commission,* 509 A.2d 453, 458 (R.I.1986)). Although factual findings of an administrative agency are afforded great deference, a dispute involving statutory interpretation is a question of law to which we apply *de novo* review. *In re Advisory Opinion to the Governor,* 732 A.2d 55, 60 (R.I.1999) (citing *City of East Providence v. Public Utilities Commission,* 566 A.2d 1305, 1307 (R.I.1989)).

## III

### Analysis

The single issue before this Court is whether a person who suffers a work-related injury and aggravates the same injury after resuming work must identify a specific incident causing the aggravation to qualify for an accidental disability pension under § 36–10–14. Rossi maintains that she is entitled to an accidental disability pension because the retirement board, and subsequently the Superior Court, committed an error of law by construing § 36–10–14 to require that she identify a discrete occurrence causing the aggravation of her 1992 injury. According to her, this reading of the statute is incorrect. Section 36–10–14 provides as follows:

"**Retirement for accidental disability.**—(a) Medical examination of an active member for accidental disability and investigation of all statements and certificates by him or her or in his or her behalf in connection therewith shall be made upon the application of the head of the department in which the member is employed or upon application of the member, or of a person acting in his or her behalf, stating that the member is physically or mentally incapacitated for the performance of service as a natural and proximate result of an accident while in the performance of duty, and certify the definite time, place, and conditions of the duty performed by the member resulting in the alleged disability, and that the alleged disability is not the result of willful negligence or misconduct on the part of the member, and is not the result of age or length of

service, and that the member should, therefore, be retired.

"(b) The application shall be made within five (5) years of the alleged accident from which the injury has resulted in the members present disability and shall be accompanied by an accident report and a physicians report certifying to the disability; provided that if the member was able to return to his or her employment and subsequently reinjures or aggravates the same injury, the application shall be made within the later of five (5) years of the alleged accident or three (3) years of the reinjury or aggravation.

"(c) If a medical examination conducted by three (3) physicians engaged by the retirement board and such investigation as the retirement board may desire to make shall show that the member is physically or mentally incapacitated for the performance of service as a natural and proximate result of an accident, while in the performance of duty, and that the disability is not the result of willful negligence or misconduct on the part of the member, and is not the result of age or length of service, and that the member has not attained the age of sixty-five (65), and that the member should be retired, the physicians who conducted the examination shall so certify to the retirement board stating the time, place, and conditions of service performed by the member resulting in the disability and the retirement board may grant the member an accidental disability benefit.

"(d) The retirement board shall establish uniform eligibility requirements, standards, and criteria for accidental disability which shall apply to all members who make application for accidental disability benefits."

At the outset, it is important to note that the words "specific incident" appear nowhere in § 36–10–14. However, § 36–10–14(a) does require that to qualify for an accidental disability pension, an applicant's condition be the "natural and proximate result of an *accident* while in the performance of duty, and certify the *definite time, place, and conditions* of the duty performed by the member resulting in the alleged disability." (Emphases added.) Thus, by requiring an "accident" and a "definite time, place, and condition," it is beyond question that an employee claiming entitlement to an accidental disability pension must identify a specific incident that caused the disabling injury. This conclusion is further reinforced by the fact that one does not qualify for an accidental disability pension if his or her condition is "the result of age or length of service." *Id.*

■ Before we address the parties' respective arguments, it is helpful to briefly outline the various retirement plans available to members of the state retirement system. A retirement pension may be based on years of service or it may become available by virtue of a disabling condition. *See Rocha v. State*, 705 A.2d 965, 967 (R.I.1998). This latter form of retirement is further divided into two categories: ordinary disability and accidental disability. When an injury is not work-related or if it is not the result of a specific accident, an employee may nevertheless qualify for an ordinary disability pension. Although the conditions for this form of disability pension are less onerous, the payout is typically less. *Cf. Connelly v. City of Providence Retirement Board*, 601 A.2d 498, 500 (R.I.1992) ("The sole difference between accidental and ordinary benefits is the manner in which an employee becomes disabled, which accounts for the difference in compensation.").[2]

2. *Connelly v. City of Providence Retirement* *Board*, 601 A.2d 498, 500 (R.I.1992) involved

■ Apart from the state retirement system, employees who suffer work-related injuries also may qualify for workers' compensation benefits. However, workers' compensation is not intended as a substitute for retirement, and therefore the standards for receiving benefits are less demanding than the requirements for accidental disability. *See Tavares v. Aramark Corp.*, 841 A.2d 1124, 1128 (R.I.2004) (causation standard for workers' compensation claims is less than proximate cause); *Mullaney v. Gilbane Building Co.*, 520 A.2d 141, 143–44 (R.I.1987) (workers' compensation not intended as a retirement plan).

■ In light of these distinctions, it is obvious that the Legislature intended the requirements for accidental disability retirement to be stringent: the applicant's disabling condition must be the result of a work-related accident; the injured person must identify the time, place, and conditions that caused the disabling accident; and the condition must be a natural and proximate result of the accident, rather than the result of age or length of service. Section 36–10–14(a), (c). Therefore, an employee who suffers an occupational injury that results from "age or length of service," rather than a specific incident, does not qualify for an accidental disability pension, but may nevertheless qualify for other forms of compensation. *See Vater v. HB Group*, 667 A.2d 283, 285 (R.I.1995) (workers' compensation applicable to occupational disease); *accord Adams v. Contributory Retirement Appeal Board*, 414 Mass. 360, 609 N.E.2d 62, 66 (1993) (holding "wear and tear" type injuries not compensable under Massachusetts' accidental disability statute).

■ It is the position of the retirement board that Rossi does not satisfy the conditions that would make her eligible for an accidental disability retirement because she did not file an application within five years of her 1992 accident, and her subsequent aggravation of that injury was not the result of a specific incident. Section 36–10–14(b) provides that an application for accidental disability benefits must be filed within five years of a disabling accident, but Rossi did not apply until 2002. However, the second clause of § 36–10–14(b) provides that if an injured employee "was able to return to his or her employment and subsequently *reinjures or aggravates the same injury,* the application shall be made within the later of five (5) years of the alleged accident or three (3) years of the reinjury or aggravation." (Emphasis added.) Thus, the time period for filing a claim is extended three years in the case of a reinjury or aggravation of the "same injury." Section 36–10–14(b). It is on this clause that we focus our attention.

Rossi contends that she is entitled to an accidental disability pension because she filed her application within a three-year period following the aggravation of her 1992 injury. The retirement board maintains that her claim is deficient in that it fails to specify an "accident" and a "definite time, place, and condition," causing the aggravation. However, in our opinion, Rossi's 1992 accident satisfies the statutory requirements and § 36–10–14 does not require Rossi to identify a specific, subsequent accident causing aggravation of that "*same* injury." The retirement board's interpretation of the statute would require a person claiming disability based on aggravation to meet the same standard as for the original, disabling accident. However,

a Providence firefighter's right to accidental disability benefits under P.L.1923, ch. 489, § 9, entitled "An Act to Provide For the Retirement of Employees of the City of Providence."

to interpret the law in that way would render the second clause of § 36–10–14(b) largely superfluous. *See Retirement Board of Employees' Retirement System of Rhode Island v. DiPrete,* 845 A.2d 270, 279 (R.I.2004) ("We presume that the General Assembly intended to attach significance to every word, sentence and provision of a statute.").

Section 36–10–14(b) applies when an injured person returns to work and either "reinjures *or* aggravates" his or her injury. (Emphasis added.) We agree with Rossi that requiring a person to identify a specific incident of aggravation would render the term "aggravation" synonymous with "reinjury." In our opinion, the two terms must have different meanings; otherwise the word "aggravation" would be redundant. *See Ruggiero v. City of Providence,* 893 A.2d 235, 238 (R.I.2006) (holding "paid" and "payable" have different meanings because "we must presume that the drafters intended every word * * * to have a useful purpose and to have some force and effect"). While the term "reinjury" implies a specific injurious event, the plain and ordinary meaning of "aggravation" implies something that occurs over time. American Heritage Dictionary 33 (4th ed.2000) ("aggravate" defined as "[t]o make worse or more troublesome"). We therefore believe that the Legislature intended these terms to describe two distinct circumstances under which a work-related injury may give rise to an entitlement to an accidental disability pension outside the five-year statute of limitations applicable to the original injury.

▮▮▮ The retirement board urges that, as the agency charged with administering § 36–10–14, its interpretation of the statute is owed deference. Although this Court is the final arbiter of questions of statutory construction, it is also true that "we give deference to an agency's inter-

pretation of an ambiguous statute that it has been charged with administering and enforcing, provided that the agency's construction is neither clearly erroneous nor unauthorized." *Arnold v. Rhode Island Department of Labor and Training Board of Review,* 822 A.2d 164, 169 (R.I.2003); *see also Labor Ready Northeast, Inc. v. McConaghy,* 849 A.2d 340, 345–46 (R.I. 2004) (holding that the Department of Business Regulation's interpretation of the term "instrument" was owed deference); *Martone v. Johnston School Committee,* 824 A.2d 426, 432 (R.I.2003) (although the term "suspension" was susceptible to more than one meaning, Commissioner of Education's interpretation was not clearly erroneous and thus deference standard applied). In this case, we fail to see where the retirement board has interpreted the statutory term "aggravation." However, in reviewing the hearing transcripts and the decision of the disability subcommittee, adopted by the retirement board, it is apparent that the board implicitly interpreted the statutory language as requiring a specific aggravating incident. In our opinion, this interpretation clearly is wrong.

Notwithstanding our conclusion that § 36–10–14 does not require proof of a specific incident causing aggravation of a work-related injury, nothing in this opinion should be construed as lessening the requirements for an accidental disability pension. As set forth in the statute, a person's debilitating condition must be the natural and proximate result of a specific, work-related accident, as verified by medical evidence. Section 36–10–14(a) through (c). In the case before us, the evidence shows that Rossi did, in fact, suffer a specific, work-related injury when she was slammed with a heavy metal gate in 1992, and that she reported it to her superiors in a timely fashion and in sufficient detail.

When the retirement board considered Rossi's application for an accidental disability pension, it was in possession of the records from the 1992 accident and the reports of three physicians who had examined the applicant on the board's behalf. However, our review of the record leads us to the conclusion that the retirement board made a decision adverse to Rossi based solely on its finding that there was no specific incident that aggravated her previous injury. Therefore, the board did not even consider the medical reports that tie her current condition to the original injury, nor did it even determine whether she currently is disabled. We therefore remand this case to the retirement board so that these determinations can be made.

## IV

### Conclusion

For the foregoing reasons, we quash the judgment of the Superior Court and remand for further proceedings consistent with this opinion.