DECISION
Before the Court is Pauline Richard's ("Richard" or "Appellant") appeal from a decision of the Employees' Retirement System of the State of Rhode Island ("ERSRI"). In this decision, ERSRI denied Richard's application for an accidental disability pension. For the reasons set forth below, this Court affirms ERSRI's decision. Jurisdiction is pursuant to G.L. 1956 § 42-35-15.
 I Facts and Travel
This case arises out of an injury that Richard, a certified nursing assistant employed by the Rhode Island Veterans Home, sustained on November 14, 2006 when she was lifting a patient. On November 27, 2007, she applied to ERSRI for disability retirement. (ERSRI Record Ex. 2, Disability Retirement Application, Nov. 27, 2007.) In this application, she stated that, due to a disc bulge to her left side, she cannot lift anymore as required by her job at the Rhode Island Veteran's Home, where she had been employed from May 1995 through November 2006. Id.
Richard's physician, Malcolm W. MacDonald, M.D. ("Dr. MacDonald") submitted the applicant's physician's statement for disability. (ERSRI Record Ex. 3, *Page 2 
Applicant's Physician's Statement for Disability, Dec. 28, 2006.) On this form, he certified that based on his physical exam of Richard, she was no longer able to perform the duties of her job.Id. Dr. MacDonald based this conclusion on a diagnosis of "back strain," that Richards had to lift patients, and that no light duty was available in her job description. Id. He further answered affirmatively that this disability was "the natural and proximate result of an accident sustained in the performance of [Richard's] duties." Id.
ERSRI also had three independent medical evaluations performed on Richards. The first physician, William F. Garrahan, M.D. ("Dr. Garrahan") found "to a reasonable degree of medical certainty that [Richard] is physically or mentally incapacitated such that [she] cannot perform the duties of [her] position." (ERSRI Record Ex. 8, ERSRI Independent Medical Examination by William F. Garrahan, M.D., Aug. 28, 2008.) Dr. Garrahan, however, then answered that in his opinion to a reasonable degree of medical certainty, Richard's incapacity was not the natural and proximate result of an on the job injury and not the result of age or length of service.Id. Dr. Garrahan based this finding on his "belie[f] that the patient is disabled, but she is disabled from generalized osteoarthritis and disc degeneration and that she has made a recovery from any particular injury that might be stated to have occurred on November 16, 2006." Id. Therefore, he found that Richard is a "candidate for non-accidentally disability pension but has made a recovery from the injury." Id.
Michael Wiggins, M.D. ("Dr. Wiggins") also performed an ERSRI Independent Medical Examination. (ERSRI Record Ex. 9, ERSRI Independent Medical Examination by Michael Wiggins, M.D., Oct. 3, 2008.) Like Dr. Garrahan, Dr. Wiggins found that *Page 3 
although it is his opinion that Richard is physically incapacitated such that she cannot perform the duties of her position, he also believes that her incapacity is not the natural and proximate result of an on the job injury. Id.
Specifically, Dr. Wiggins found that her back pain is more likely than not "related to age and length of service and not directly related to any work injury." Id. These complaints, according to Dr. Wiggins, are common in the general population and related to degenerative disc disease. Id. He continued to explain that her leg pain and sciatica while related to the work injury are resolved. Id. Dr. Wiggins concluded that, "although [he does not] believe her complaint/back problem to be the result of her job, she is unable to perform her job due to her back." Id.
Additionally, William S. Buonanno, M.D. ("Dr. Buonanno") performed an independent medical examination of Richard. (ERSRI Record Ex. 10, ERSRI Independent Medical Examination by William S. Buonanno, M.D., Sept. 18, 2008.) Dr. Buonanno certified that in his opinion, Richard is physically incapacitated such that she cannot perform the duties of her position and also that this incapacity is the natural and proximate result of an on the job injury and not the result of age or length of service. Id. Dr. Buonanno specifically found that it has been two years since her injury and Richard still "has constant spasms and she will not return to work as a CNA which is extremely physical." Id.
On November 12, 2008, Arne C. Perry, Assistant Director of Member Services, sent Richard a letter notifying her that at its November 12, 2008 meeting, the Retirement Board of the State of Rhode Island ("Board") voted to deny her application for an accidental disability pension. (ERSRI Record Ex. 12, Notice of Denial, Nov. 12, 2008.) *Page 4 
Attached to this letter was the decision of the Disability Subcommittee ("Subcommittee") on the matter. Id. In its decision, the Subcommittee made findings of fact regarding the evaluations of Richard's conditions by the independent physicians. It then stated that Richard must meet the requirements set forth in G.L. 1956 § 36-10-14[1] to qualify for an *Page 5 
accidental disability pension. Id. The Subcommittee then found that Richard "is not incapacitated for the performance of service as the natural and proximate result of a specific and identifiable accident while in the performance of duty."Id. Specifically, the Subcommittee noted that two out of three of the independent medical examiners concluded that her injury was the result of age or length of service, not a specific accident. Moreover, the Subcommittee found evidence that Richard suffered from a preexisting degenerative disk disease, which has caused her condition. Id.
Richard appealed the Subcommittee's decision, and a hearing was held on March 6, 2009. Prior to this hearing, Richard submitted further medical documentation from Dr. MacDonald. (ERSRI Record Ex. 16.) At the hearing, Counsel for Richard argued that her injury was a proximate cause of her condition, despite any other pre-existing conditions she also may have had. (ERSRI Record Ex. 18, Disability Subcommittee Transcript, Mar. 6, 2009 ("Tr.") at 6-12.) Richard also responded to questions from the Subcommittee regarding her injury.Id. at 13-15. She stated that after her injury she went to see her doctor, Dr. MacDonald, who ordered her to have an MRI.Id. at 13-14. *Page 6 
She then testified that through the MRI, he found that she had "two discs out." Id. at 14. She further testified that Dr. MacDonald is her doctor but they have no personal relationship. Id. Additionally, she stated that she had never had any back trouble in the past and had never seen an orthopedist or a back doctor prior the accident. Id. at 15.
Following the hearing, the Subcommittee requested medical records for three years prior to her accident from any doctor and three years prior to her injury work history. On September 11, 2009, the Subcommittee sent Richard a notice of denial, which Richard appealed to the Board. The Board considered this appeal at a hearing on November 12, 2009. (ERSRI Record Ex. 33, Board Tr., Nov. 12, 2009 ("Board Tr.")) During this hearing, counsel for both parties made argument, after which the Board voted.Id. Before voting, a counsel member stated that "[the Board is] bound with the construction of the language as it presently exists. . . . [I]t would be disingenuous from my perspective to have voted in the last matter consistent with the findings of the [independent medical examiners]. . . . In this particular matter, to go in the opposite direction, I think would be disingenuous. . . ."Id. at 18. The Board members then voted to uphold the decision of the Subcommittee. Id. at 19-20. On November 13, 2009, Frank J. Karpinski, Executive Director of ERSRI, provided Richard with the notice of denial of her application. (ERSRI Record Ex. 34, Notice of Denial, Nov. 13, 2009.)
On December 8, 2009, Richard timely appealed the denial of her application to this Court. In her appeal, Richard argues that the Board's interpretation of the language "natural and proximate result of an accident while in the performance of duty" within § 36-10-14 is clearly erroneous. She contends that ERSRI erroneously determined that her disability was not a result of the accident at issue because it is also due to her age. In *Page 7 
response, ERSRI avers that § 36-10-14 is unambiguous and the Board's interpretation is not clearly erroneous because the statute plainly requires a causal link between the accident and disability. Therefore, ERSRI contends the Board's decision was not clearly erroneous because Richard failed to establish that her disability was, in fact, caused by an accident while in the performance of her duty.
 II Standard of Review
The scope of the Court's review is limited by the Rhode Island Administrative Procedures Act, which mandates that:
 "[t]he court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 "(1) In violation of constitutional or statutory provisions;
 "(2) In excess of the statutory authority of the agency;
 "(3) Made upon unlawful procedure;
 "(4) Affected by other error of law;
 "(5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 "(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
Accordingly, this Court defers to the administrative agency's factual determinations provided that they are supported by legally competent evidence. Arnold v. Rhode Island Dep't of Labor andTraining Bd. of Review, 822 A.2d 164, 167 (R.I. 2003). Legally competent evidence is "`some or any evidence supporting the agency's findings.'" Auto Sec. 42-35-15(g). *Page 8 Body Ass'n of Rhode Island v. Department of BusinessRegulation, 996 A.2d 91, 95 (R.I. 2010) (quotingEnvironmental Scientific Corp. v. Durfee,621 A.2d 200, 208 (R.I. 1993)).
This Court reviews questions of law de novo. Narragansett WireCo. v. Norberg, 118 R.I. 596, 607, 376 A.2d 1, 6 (1977). "`When a statute is clear and unambiguous we are bound to ascribe the plain and ordinary meaning of the words of the statute.'" Town ofBurrillville v. Pascoag Apartment Assocs.,950 A.2d 435, 445 (R.I. 2008) (quoting Unistrut Corp. v. RhodeIsland Dep't of Labor and Training, 922 A.2d 93, 98 (R.I. 2007)). However, the Court will defer to an agency's interpretation of an ambiguous statute "`whose administration and enforcement have been entrusted to the agency * * * even when the agency's interpretation is not the only permissible interpretation that could be applied.'"Auto Body Ass'n of Rhode Island,996 A.2d at 97 (omission in original) (quoting Pawtucket PowerAssocs. Limited Partnership v. City of Pawtucket,622 A.2d 452, 456-57 (R.I. 1993)) (redactions in original). The Court will not defer to an agency's statutory interpretation if it is "`clearly erroneous or unauthorized.'" Id. (quotingUnistrut Corp., 922 A.2d at 99).
ERSRI uses a two-tier review process in which a hearing officer hears grievances and then issues a written decision that is submitted to the Retirement Board. The Board considers the decision as well as any further briefs, and subsequently renders its own decision. ERSRI Reg. § 10.00(a). This two-tier system is similar to a funnel. Environmental Scientific Corp. v. Durfee,621 A.2d 200, 207-07 (R.I. 1993). At the first level of review, the hearing officer "sits as if at the mouth of the funnel" and analyzes the evidence, issues, and live testimony. Id. At the second level of review, the "discharge end" of the funnel, the Board only considers evidence that the hearing officer received *Page 9 
first-hand. Id. Therefore, the "further away from the mouth of the funnel that an administrative official is . . . the more deference should be owed to the fact finder." Id.
 III Analysis A Language of § 36-10-14
In her appeal, Richard argues that the Board's interpretation of the language "natural and proximate result of an accident while in the performance of duty" within § 36-10-14 is clearly erroneous. Richard specifically contends that the Board erroneously views the language "proximate cause" within § 36-10-14 as an "either/or" proposition. Richard instead maintains that an accidental disability applicant can have a disability which is a proximate result of an accident while in the performance of a duty or as a result of age. ERSRI, however, contends that the Board's interpretation of § 36-10-14 is not clearly erroneous because that statute requires a causal connection between the accident and the disability.
Under the state retirement system, a retirement pension may be either based on years of service or by virtue of a disability.Rossi v. Employees' Retirement Sys.,895 A.2d 106, 112 (R.I. 2006) (citing Rocha v. State,705 A.2d 965, 967 (R.I. 1998)). Retirement pensions that become available due to a disability are divided into ordinary disability pensions and accidental disability pensions. Id. Accidental disability pensions have more onerous requirements, and the payout is typically more. Id. (citing Connelly v. City ofProvidence Retirement Bd., 601 A.2d 498, 500 (R.I. 1992) ("The sole difference between accidental and ordinary benefits is the manner in which an employee *Page 10 
becomes disabled, which accounts for the difference in compensation.")). To obtain accidental disability benefits from ERSRI, an employee must meet the requirements as provided in § 36-10-14. This statute provides in part:
 "(c) If a medical examination conducted by three (3) physicians engaged by the retirement board and such investigation as the retirement board may desire to make shall show that the member is physically or mentally incapacitated for the performance of service as a natural and proximate result of an accident, while in the performance of duty, and that the disability is not the result of willful negligence or misconduct on the part of the member, and is not the result of age or length of service, and that the member has not attained the age of sixty-five (65), and that the member should be retired, the physicians who conducted the examination shall so certify to the retirement board stating the time, place, and conditions of service performed by the member resulting in the disability and the retirement board may grant the member an accidental disability benefit." Sec. 36-10-14(c).
As evidenced by these requirements and the differences between an accidental disability pension and an ordinary disability pension, "it is obvious that the Legislature intended the requirements for accidental disability retirement to be stringent." Rossi,895 A.2d at 112. Our Supreme Court further elaborated on the requirement that the disability be a "natural and proximate cause" of the accident in Pierce v. Providence Retirement Board.See No. 2009-145-M.P., slip. op. (filed Mar. 2, 2011).[2] To define these terms, the Court in Pierce turned to "elementary tort law" and, thus, defined "natural" as "`consequences which are normal, not extraordinary, [and] not surprising in light of ordinary experience.'" Id. at 11 (quoting W. Page Keeton et al.,Prosser and Keeton on Torts, § 43 at 282 (5th ed. 1984)). *Page 11 
Moreover, in that context, "proximate" necessitates "a factual finding that the `harm would not have occurred but for the [accident] and that the harm [was a] natural and probable consequence of the [accident].'" Id.
(alterations in original) (quoting DiPetrillo v. Dow Chem.Co., 729 A.2d 677, 692-93 (R.I. 1999)). Indeed, "proximate causation" is a more exacting standard than mere "but for causation." Id. at 11-12 (quoting State v.Lead Indus. Ass'n, Inc., 951 A.2d 428, 451 (R.I. 2008)). Accordingly, to establish proximate cause under this statute, the employee must show that "(1) `but for' the 2006 accident, [the employee] would not have become permanently disabled, and (2) [the employee's] permanent disability was `a natural and probable consequence of the [accident].'" Id. at 12. (citingDiPetrillo, 729 A.2d at 692). Proximate cause, however, "`need not be the sole and only cause. It need not be the last or latter cause. It's a proximate cause if it concurs and unites with some other cause, acting at the same time, produces the injury of which complaint is made.'" Id. at 13-14 (quotingHueston v. Narragansett Tennis Club, Inc.,502 A.2d 827, 830 (R.I. 1986)) (citing Funston v. School Town ofMunster, 849 N.E.2d 595, 600 (Ind. 2006)).
In this case, ERSRI found that "two out of three independent medical examiners concluded that Richard's injury was the result of age or length of service, and not a specific accident." (Decision at 7.) Thus, ERSRI's interpretation of the statute acknowledges for proximate cause to be present the accident must be the "but-for cause" because its notice of denial indicates that it found that the injury would have occurred with or without the accident. ERSRI's interpretation of proximate cause is consistent *Page 12 
with Pierce because it requires "but for causation," instead of an "either/or" analysis.[3] See Pierce, slip. op. at 12, 13-14. Accordingly, ERSRI's interpretation of § 36-10-14 is not clearly erroneous.
 B Proximate Cause Finding
Richard further contends that the Board's finding that proximate cause did not exist was clearly erroneous. ERSRI, however, argues that proximate cause is a question of fact and, therefore, not subject to review under § 42-35-14. Additionally, ERSRI maintains that Richard failed to establish that her disability was, in fact, caused by an accident while in the performance of her duty.
It is established that the existence of proximate cause is a question for the fact finder. Seide v. State,875 A.2d 1259, 1268 (R.I. 2008) (quoting Rodrigues v. MiriamHosp., 623 A.2d 456, 461 (R.I. 1993))[4]; see alsoPierce, slip. op. at 11 (explaining that proximate cause requires a factual finding). Therefore, this Court will defer to ERSRI's factual determinations so long as they are supported by legally competent evidence. See Auto Body Ass'n of RhodeIsland, 996 A.2d at 95. Accordingly, this Court will uphold the administrative decision unless the officer did not act within her authority and her decision was not "rational, logical, and supported by substantial evidence." Goncalves v. NMU PensionTrust, *Page 13 818 A.2d 678, 682-83 (R.I. 2003) (citing Doyle v. Paul RevereLife Ins. Co., 144 F.3d 181, 184 (1st Cir. 1998)).
In this case, the Subcommittee based its decision mainly on the independent medical examiners. In his report, [5] Dr. Garrahan concluded that Richard "is disabled, but she is disabled from generalized osteoarthritis and disc degeneration and that she has made a recovery from any particular injury that might be stated to have occurred on November 16, 2006." (Ex. 8.) Similarly, Dr. Wiggins stated that "[i]t is more likely than not, that the patient's back pain related to age and length of service and not directly related to any work injury. Her complaints of leg pain and sciatica are however related to the work injury, but these have resolved. Her findings . . . are commonly found in the general population and are related to degenerative disc disease." (Ex. 9.) This evidence is competent legal evidence because it is "`some or any evidence supporting the agency's findings.'" See Auto Body Ass'n ofRhode Island, 996 A.2d at 95 (quoting Environmental ScientificCorp., 621 A.2d at 208). Additionally, this Court will not substitute its judgment for that of the Subcommittee on the credibility of witness or the weight given to testimony and other evidence. See Costa v. Registrar of Motor Vehicles,543 A.2d 1307, 1309 (R.I. 1988). Accordingly, the Subcommittee's conclusion that the reports of these doctors demonstrate a lack of proximate cause between the accident and the injury is not clearly erroneous. *Page 14 
 III Conclusion
After a review of the entire record, this Court finds that the decision of ERSRI is supported by reliable, probative, and substantial evidence and is not affected by error of law. The appealed administrative decision was neither arbitrary nor capricious and did not constitute an abuse of discretion. Appellants' substantial rights have not been prejudiced. For the reasons above, this Court affirms ERSRI's decision denying Richard's accidental disability pension. Counsel shall submit the appropriate judgment for entry.
[1] This statute provides the following:
 "(a) Medical examination of an active member for accidental disability and investigation of all statements and certificates by him or her or in his or her behalf in connection therewith shall be made upon the application of the head of the department in which the member is employed or upon application of the member, or of a person acting in his or her behalf, stating that the member is physically or mentally incapacitated for the performance of service as a natural and proximate result of an accident while in the performance of duty, and certify the definite time, place, and conditions of the duty performed by the member resulting in the alleged disability, and that the alleged disability is not the result of willful negligence or misconduct on the part of the member, and is not the result of age or length of service, and that the member should, therefore, be retired.
 "(b) The application shall be made within five (5) years of the alleged accident from which the injury has resulted in the members present disability and shall be accompanied by an accident report and a physicians report certifying to the disability; provided that if the member was able to return to his or her employment and subsequently reinjures or aggravates the same injury, the application shall be made within the later of five (5) years of the alleged accident or three (3) years of the reinjury or aggravation. The application may also state the member is permanently and totally disabled from any employment.
 "(c) If a medical examination conducted by three (3) physicians engaged by the retirement board and such investigation as the retirement board may desire to make shall show that the member is physically or mentally incapacitated for the performance of service as a natural and proximate result of an accident, while in the performance of duty, and that the disability is not the result of willful negligence or misconduct on the part of the member, and is not the result of age or length of service, and that the member has not attained the age of sixty-five (65), and that the member should be retired, the physicians who conducted the examination shall so certify to the retirement board stating the time, place, and conditions of service performed by the member resulting in the disability and the retirement board may grant the member an accidental disability benefit.
 "(d) The retirement board shall establish uniform eligibility requirements, standards, and criteria for accidental disability which shall apply to all members who make application for accidental disability benefits." Sec. 36-10-14.
[2] In that case, the Court interpreted the City of Providence ordinance regarding accidental disability pensions and found that it was analogous to § 36-10-14. See Pierce, slip. op. at 7 (citing Rossi, 895 A.2d at 111, 112).
[3] This case is distinguishable from Pierce because in that matter, the firefighter's permanent disability was a result of a number of on-the-job injuries and the physicians found that all of the accidents and traumas played a role his permanent disability, but his final accident was the most serious. See
slip. op. at 12-13.
[4] Although this matter is not based in negligence, "the principles of injury causation elucidated by tort law are sufficiently analogous to the instant issue of disability causation to render this area of law eminently useful to our analysis."Pierce, slip. op. at 11 n. 10 (citing City of CedarRapids v. Municipal Fire and Police Retirement Sys. of Iowa,526 N.W.2d 284, 288 (Iowa 1995)).
[5] Richard also contends that the form for the independent medical examiners is misleading because a "yes" or "no" answer is required to the question, "In my opinion to a reasonable degree of medical certainty that the applicant's incapacity is the natural and proximate result of an on the job injury and not the result of age or length of service." Richard, however, disregards the requisite detailed medical reports that the independent medical examiners attach to the report.
 *Page 1