DECISION
Before this Court is an appeal from a decision of the Rhode Island Commission for Human Rights, finding that appellants discriminated against Henry Blaine Gaffney and Charlean S. Gaffney, in violation of the Fair Housing Practices Act, by denying their application for a subdivision. For the reasons set forth in this Decision, this Court finds that the decision of the Commission was affected by legal error and remands this case to the Commission for reconsideration in light of this Decision. *Page 2 
 I Facts And Travel
In 1975, the Gaffneys purchased property in the Town of Cumberland, Rhode Island. They lived in one house with their children on Nate Whipple Highway, Cumberland, Rhode Island, and rented a house on Old Reservoir Road in Cumberland. After a number of years, the Gaffneys wished to subdivide the approximately 3.08 acre lot on Old Reservoir Road so that they and their two sons could live on the property.
The subdivision approval process consists of four stages: (1) an applicant's submission of a pre-application sketch plan to the Planning Board; (2) an applicant's submission of a preliminary plat to the Planning Board; (3) an applicant's submission of a final plat to the Planning Board; and (4) a public hearing. The Planning Board's approval of a subdivision of property is not final until it conducts a public hearing. The applicant can appeal to the Zoning Board of Review if the Planning Board denies its application. At the pre-application sketch plan phase, the applicant must submit an "informal drawing which shows the basic design and facilities of a proposed subdivision." Town of Cumberland Subdivision Regulations, Section I, Article B, Item 5. The purpose of requiring an applicant to submit a pre-application sketch plan is to prevent a landowner from incurring the cost and expense of planning and development if the subdivision concept, on its face, is unacceptable to the Planning Board.
The property at issue, which has only 94.93 feet of public road frontage, is a preexisting nonconforming lot of record with less than the required 100 feet of frontage. The Gaffneys proposed to subdivide the property into three lots: a 1.04 acre lot containing the existing dwelling and two new lots consisting of 1.04 acres and 1.03 acres, *Page 3 
respectively. The proposed new lots do not have any frontage on a public street and would be accessed by a 40 foot private right-of-way over the first lot.
On October 15, 1990, the Gaffneys began the process of obtaining subdivision approval by submitting their pre-application sketch plan to the Planning Board. The minutes of the meeting reflect a discussion as to whether the Planning Board would accept the proposed right-of-way. According to the minutes, one board member stated that it would not be a problem. The Planning Board voted to grant pre-application approval, subject to the availability of water to the parcel and also the requirement that the proposed right-of-way be conveyed specifically in the deeds.
On August 18, 1992, the Gaffneys submitted a preliminary plat to the Planning Board for conditional approval. Again, the plan reflected a private 40 foot right-of-way to provide access to the two proposed new parcels. The Planning Board voted to approve the preliminary plat with the following conditions: (1) the final plat must show the proposed relocation of the garage because the right-of-way runs through the present location of the garage; (2) the final plat must show a cul-de-sac at the end of the right-of-way so that emergency vehicles can turn around; and (3) the Gaffneys must list zoning on the drawing, add a general note with regard to topography, and provide proof of individual sewer disposal system (ISDS) approval.
The Gaffneys did not submit a final plat to the Planning Board for approval until April 19, 1994. The Planning Board questioned why the Gaffneys waited so long to return for continued approval. Thomas Letourneau, an abutting property owner, advised the Planning Board of some serious surface water problems on the Gaffneys' property. The Planning Board voted to deny the Gaffneys' petition because a significant number of *Page 4 
requirements for the final plat — including engineering input, information on water, and a new abutter's list — were not met, and the Gaffneys had not returned to the Planning Board until well after the six-month deadline.
On July 19, 1994, the Gaffneys resubmitted their preliminary plat to the Planning Board for approval. The Planning Board voted to grant preliminary approval and allow the Gaffneys to submit their final plat on September 20, 1994. During that September meeting, the Planning Board reviewed correspondence from Mr. Letourneau, which raised a number of concerns regarding surface water, and voted to continue the hearing on the final plat and require the Gaffneys to bring the plans up to subdivision standards.
The Planning Board held the continued hearing on the Gaffneys' request for final plat approval on October 18, 1994. The minutes reflect extensive discussion regarding drainage and the fact that the lots did not have 911 house numbers. Regarding the lots' lack of frontage, Planning Board Member Joseph Simanski stated that the Planning Board can waive the frontage requirements, but that it would set a bad precedent to permit a number of lots with private drives. The Planning Board then denied the motion to approve the Gaffneys' final plat.[1] The Planning Board's stated reasons for denying approval were as follows: "(1) Section 5, Article E, Item 1, `Footage'; (2) Section 5, Article C, Item 4, `No Private Streets'; (3) 911 cannot assign numbers properly based on the fact that the proposed lots are not on public or proposed streets; [and] (4) the Board needs a signed signature from the Town Engineer stating he approved of the drainage *Page 5 
systems and the galley systems[, which would control water flow on the property]." Meeting Minutes, Cumberland Planning Board, October 18, 1994.
The Planning Board held a further public hearing on the Gaffneys' request for approval of the final plat on February 21, 1995, at which John Andrews, their professional engineer, asked it to reconsider its decision to deny approval of the final plat. Mr. Andrews submitted a letter stating that the Highway and Sewer Superintendent had no problem with the proposed surface water retention design. Mr. Andrews also stated that 911 coordinators indicated to him that there is an acceptable way to assign numbers on a private drive. The Planning Board then voted to reconsider the Gaffneys' application for final plat approval. Mr. Letoureau again spoke regarding the surface water problems. He stated that he previously wanted to subdivide his land, but that the Planning Board denied his application for the same reasons. The Planning Board members generally stated that they had no problem with frontage. The Planning Board then voted to continue the hearing on the final plat for further review of the 911 issues and for additional engineering information.
At the continued final plat hearing on March 21, 1995, the Gaffneys submitted a letter from the 911 office stating that it did not have a problem with the house numbering on the private drive. Mr. Letourneau spoke about the proposed septic system being too close to a well. The Planning Board denied the motion to approve the final plat and scheduled the matter for a public hearing.
The Planning Board held a public hearing on April 18, 1995, at which time Mr. Letoureau submitted pictures showing the surface water on his property. Mr. Gaffney stated that the drainage plan would take care of the run-off problems. The Planning *Page 6 
Board voted to deny the Gaffneys' application for the following reasons: (1) lack of street frontage; (2) private road prohibited; and (3) the proposed subdivision is contrary to the Subdivision Regulations.[2] On June 14, 1995, the Zoning Board upheld the Planning Board's decision for the same reasons.
The Gaffneys did not appeal the Zoning Board decision to the Superior Court, but instead filed a charge of discrimination with the Rhode Island Commission for Human Rights on April 18, 1995.[3] In their charge, the Gaffneys named as respondents: the Town of Cumberland; the Cumberland Zoning Board of Review; George Cross, Finance Director; and N. David Bouley, Town Planner. The Gaffneys alleged that the respondents discriminated against them by interfering with their right to own, enjoy, and use their property free from discrimination due to race and color in violation of the Rhode Island Fair Housing Practices Act, R.I.G.L. 1956 § 34-37-5.1 (FHPA). After a preliminary investigation, the Commissioner found probable cause to believe that respondents had violated § 34-37-5.1. The Commission issued a complaint and held a hearing on that complaint on August 23, 2000.
In its decision of June 5, 2001, the Commission made findings of fact. It found that while the pre-application sketch plan must contain the location of private wells within 200 feet of the proposed subdivision, the Subdivision Regulations do not contain any explicit standard for the distance that a septic field must be from a private well. The *Page 7 
Rhode Island Department of Environmental Management Regulations provide that no person shall locate any part of an ISDS within 100 feet of a private well and that the minimum distance from a private well to a seepage pit is 200 feet. The final plat depicts the locations of the proposed septic system on the three lots, all of which are more than 100 feet from the abutters' wells, and the seepage pits are more than 200 feet from the abutters' wells. Neither the Zoning Board nor the Planning Board gave the distance of proposed septic systems from private wells as a reason for denial.
The Commission further found that, while the Subdivision Regulations require that all lots front an existing or proposed street, the Planning Board has the authority to waive this requirement. At the time of the denial of the Gaffneys' final plat, several houses already had been built in the late 1980's on Diamond Hill Road that did not front an existing street. Mr. Simanski testified that the Planning Board did not approve of private rights-of-way and that there were problems with this subdivision from the beginning. However, Mr. Simanski, at the first Planning Board meeting, moved to grant pre-application approval subject to the rights-of-way being conveyed in deeds. At another meeting, he stated that he wanted a cul-de-sac at the end of the right-of-way for emergency vehicles and approved the preliminary plat. He also moved to continue the hearing on the final plat, and the minutes indicate that the Board members had no problem with the proposed driveways and generally stated that they had no problem with frontage.
The Commission concluded that the Gaffneys did not prove by a preponderance of the evidence that N. David Bouley discriminated against them on the basis of race, and it dismissed the complaint against him with prejudice. However, the Commission held *Page 8 
that the Town of Cumberland; the Cumberland Zoning Board; and George Cross, Finance Director,[4] discriminated against the Gaffneys in violation of § 34-37-5.1 of the FHPA. The Commission ordered these appellants to either approve the final plat subdivision plan or pay the Gaffneys all of the expenses incurred in preparing plans and attending hearings after October 15, 1990. The appellants filed a timely appeal[5] in this Court against the Gaffneys,[6] the Commission, and its Commissioners.
 II Standard Of Review
Rhode Island General Laws § 42-35-15(g) governs the Superior Court's standard of review of a final agency decision. It provides, in relevant part, as follows:
 (g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency; *Page 9 
 (3) Made upon unlawful procedure;
 (4) Affected by other error or law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
R.I.G.L. 1956 § 42-35-15(g). Sitting as an appellate court with a limited scope of review, the Superior Court justice may not substitute his or her judgment for that of the agency with respect to the credibility of the witnesses or the weight of the evidence as to questions of fact. Center For Behavioral Health v. Barros, 710 A.2d 680,684 (R.I. 1998); Mine Safety Appliances Co. v. Berry, 620 A.2d 1255,1259 (R.I. 1993). "The Superior Court is confined to a determination of whether there is any legally competent evidence to support the agency's decision." Environmental Scientific Corp. v. Durfee, 621 A.2d 200, 208
(R.I. 1993). If the agency decision was based on sufficient competent evidence in the record, the reviewing court must affirm the agency's decision. Johnston Ambulatory Surgical Assocs. Ltd. v. Nolan,755 A.2d 799, 805 (R.I. 2000). This Court may reverse the findings of an administrative agency "only in instances wherein the conclusions and the findings of fact are `totally devoid of competent evidentiary support in the record,' or from the reasonable inferences that might be drawn from such evidence." Bunch v. Bd. of Review, 690 A.2d 335, 337 (R.I. 1997) (citations and quotations omitted). "Questions of law, however, are not binding upon the court and may be reviewed to determine what the law is and its applicability [to] the facts." Narragansett Wire Co. v.Norberg, 118 R.I. 596, 607, 376 A.2d 1, 6 (1977). The Superior Court also has the authority to remand a case "to correct deficiencies in the record and thus afford the litigants a meaningful review." Lemoine v.Dep't. of Mental Health, Retardation Hosps., 113 R.I. 285, 290,320 A.2d 611, 614 (1974). *Page 10 
 III Analysis A Exhaustion Of Administrative Remedies
Appellants first contend that the Gaffneys failed to exhaust their administrative remedies. They argue that the Gaffneys were required to file an appeal from the decision of the Zoning Board in the Superior Court, pursuant to R.I.G.L. 1956 § 45-23-71, before filing a charge of discrimination with the Commission. The appellees contend that the Commission had proper jurisdiction over the Gaffneys' claims of housing discrimination, notwithstanding the fact that the Gaffneys did not first file an appeal to this Court from the Zoning Board decision.
The Rhode Island Supreme Court has held that the Rhode Island Commission for Human Rights is not an agency that has the authority to review decisions of an administrative agency, although it has "coordinate powers to adjudicate" specific statutory violations concerning discrimination. School Comm. v. State Comm'n for HumanRights, 659 A.2d 1099, 1103 (R.I. 1995) (emphasis added) (recognizing concurrent jurisdiction among two state agencies, the decisions of which had been properly appealed to the Superior Court). Although the Commission does not have the authority to review decisions of the Zoning Board,[7] it does have the power to assess claims of unfair and discriminatory housing practices pursuant to the Rhode Island Fair Housing Practices Act, R.I.G.L. 1956 § 34-37-1 et seq. *Page 11 
It is well-settled that a party aggrieved by agency action must first exhaust his or her administrative remedies before bringing a claim before this Court. See Burns v. Sundlun, 617 A.2d 114, 116 (R.I. 1992). Simply put, the requirement that a party fully exhaust all available remedies at the agency level serves two purposes: "`(1) it aids judicial review by allowing the parties and the agency to develop the facts of the case, and (2) it promotes judicial economy by avoiding needless repetition of administrative and judicial factfinding, perhaps avoiding the necessity of any judicial involvement.'" Id. at 117 (quoting Schwartz, Administrative Law § 8.33 at 542 (1991)). Here, as the Commission has the independent ability to hear claims of discrimination, as discussed supra, it is only that agency's administrative remedies that needed to be exhausted before the Gaffneys could proceed with this appeal. See Southern Union Co. v. R.I. Dep't of EnvironmentalMgmt., 2007 R.I. Super. LEXIS 97, at *35 (July 13, 2005) (recognizing "[t]he exhaustion rule mandates the withholding of judicial review `until the administrative process has run its course'") (citingU.S. v. Western Pacific Railroad Co., 352 U.S. 59, 63 (1956); R.I.Employment Security Alliance v. Dep't of Employment Training,788 A.2d 465, 467 (R.I. 2002)). The Commission is the agency designated under the FHPA to perform fact-finding functions with regard to allegations made thereunder. See R.I.G.L. 1956 § 34-37-5(h)(1) (noting "the commission shall state its findings of fact"). Accordingly, appellants' argument that the Gaffneys failed to exhaust their administrative remedies by appealing the Zoning Board's decision to the Superior Court must fail;[8] the Gaffneys were not required to file a zoning appeal in this Court before filing a discrimination charge with the Commission. *Page 12 
 B Decision In Excess Of Statutory Authority
In its Decision and Order, the Rhode Island Commission for Human Rights held that appellants discriminated against the Gaffneys in violation of § 34-37-5.1 of the FHPA. Appellants contend that the FHPA does not give the Commission authority to decide whether they violated the provisions of the Act. Specifically, appellants assert that the FHPA did not give the Commission jurisdiction to hear the Gaffneys' claim against them. In addition, appellants argue that they are not an "owner," as the term appears in § 34-37-5.1, the provision which appellants are charged with violating; therefore, they contend, they cannot be held liable under the FHPA. Similarly, appellants argue that, because § 34-37-4 of the FHPA sets forth a list of various unlawful housing practices, all of which refer to an owner or persons in the business of making loans in conjunction with housing accommodations, those provisions are inapplicable and cannot be a basis for imposing liability on them under the FHPA.
In response, appellees contend that their allegations of racial discrimination against appellants fall squarely within the purview of the FHPA, appellants are precluded from asserting that such allegations do not fall under the FHPA because they failed to raise that argument at the Commission hearing, and appellants need not be "owners" or specifically violate § 34-37-4 to be held liable under § 34-37-5.1 of the Act. Moreover, the Commission argues that "[a]n objection that has not been urged before the commission, its member, or agent shall not be considered by the court, unless the failure *Page 13 
or neglect to urge the objection shall be excused because of extraordinary circumstances." R.I.G.L. 1956 § 34-37-6(c). This Court must decide, then, whether the Commission was correct in exercising jurisdiction over the Gaffneys' claim.
Under Rhode Island law, the Superior Court may review an administrative agency's determination of its own jurisdiction. See E.Grossman Sons, Inc. v. Rocha, 373 A.2d 276, 285 (R.I. 1977) (opining that "[j]udicial review of an administrative decision is designed primarily to confine the agency's activities to the jurisdiction conferred upon it by the General Assembly"). As the question of jurisdiction is largely one of law that is reviewed de novo by the Superior Court,[9] and as the issue of jurisdiction can be raised at any time,[10] this Court will proceed to address the question, notwithstanding the appellants' failure to address the jurisdictional issues at the agency level prior to this appeal. See In re AdvisoryOpinion to the Governor, 732 A.2d 55, 60 (R.I. 1999) (undertakingde novo review of question of law without deference to agency's interpretation); see also Rowse v. Platte Valley Livestock, Inc.,597 F. Supp. 1055, 1057 (D. Neb. 1984) (regarding agency's jurisdiction, a question of law is subject to de novo review).
In addressing appellants' argument that the FHPA does not give the Commission jurisdiction to hear the Gaffneys' allegations of racial discrimination, this Court must apply basic tenets of statutory construction. If the statutory language is "clear on its face, then the plain meaning of the statute must be given effect." Gilbane Co. v.Poulas, *Page 14 576 A.2d 1195, 1196 (R.I. 1990). Thus, absent equivocal or ambiguous language, wording of a statute must be applied literally, without interpretation or extension. Caithness RICA L.P. v. Malachowski,619 A.2d 833, 836 (R.I. 1993) (citing State v. LaPlume, 375 A.2d 938, 944
(R.I. 1977)). Guided by this principle, our Supreme Court has "consistently prevented state administrative agencies from expanding their jurisdiction through strained interpretations of unambiguous statutes." Id. (citing City of East Providence v. Public UtilitiesComm'n, 566 A.2d 1305, 1308 (R.I. 1989)); see also In re AdvisoryOpinion to the Governor, 732 A.2d at 60 (stating "[w]hen an agency construes its own enabling act, it is subject to increased scrutiny inasmuch as `government agencies have a tendency to swell, not shrink, and are likely to have an expansive view of their mission.'") (citingHi-Craft Clothing Co. v. NLRB, 660 F.2d 910, 916 (3d Cir. 1981)).
Furthermore, while interpreting one provision of this state's FHPA, the Rhode Island Supreme Court recognized that a literal reading of the statute cannot be ignored or disregarded simply because § 34-37-9
provides that the act "shall be construed liberally for the accomplishment of the purposes intended. . . ." R.I.G.L. 1956 § 34-37-9;see also Buffi v. Ferri, 259 A.2d 847, 850 (R.I. 1969). Nevertheless, "[w]hile literalism will not yield to a liberal construction directive, it will give way if the words to be construed, when read within the context of the entire enactment do not convey a sensible meaning, or if they lead to an absurd result, or contradict or defeat an evident legislative purpose." Buffi, 259 A.2d at 850 (citations omitted).
The statutory scheme in the case at bar involves the Rhode Island Fair Housing Practices Act, which is designed "to safeguard the right of all individuals to equal opportunity in obtaining housing accommodations free of discrimination." R.I.G.L. 1956 *Page 15 
§ 34-37-1. As such, "[t]he right of all individuals in the state to equal housing opportunities . . . regardless of race . . . is hereby recognized as, and declared to be, a civil right." Id. at § 34-37-2. In furtherance of this purpose, the FHPA designates certain practices as unlawful:
 [i]t shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by this chapter. No owner under this chapter or any agent of these shall discriminate in any manner against any individual because he or she has opposed any practice forbidden by this chapter, or because he or she has made a charge, testified, or assisted in any manner in any investigation, proceeding, or hearing under this chapter.
R.I.G.L. 1956 § 34-37-5.1 (emphasis added).
It is no surprise that a portion of this statute mirrors the text of the federal Fair Housing Act (FHA), which states in pertinent part, as follows:
 It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by [sections relating to discrimination in the sale or rental of housing, residential real estate-related transactions, or the provision of brokerage services].
42 U.S.C. § 3617. In construing other statutes which interpret civil rights guaranteed under both federal and state law, our Supreme Court has accepted guidance from decisions of the federal courts. See NewportShipyard, Inc. v. R.I. Comm'n for Human Rights, 484 A.2d 893, 897-98
(R.I. 1984) (examining federal case law in process of interpreting state employment discrimination statute); see also Center for BehavioralHealth, 710 A.2d at 685 (using federal law to interpret state law). *Page 16 
Under federal law, § 3617 of the FHA can be violated even absent a violation of another provision of the federal FHA.[11] See Stackhousev. DeSitter, 620 F. Supp. 2d 208 (N.D. Ill. 1985) (concluding that § 3617 may be violated even absent violation of other specific FHA provisions); see also Smith v. Stechel, 510 F.2d 1162 (9th Cir. 1975) (noting "[ § 3617] deals with situations in which the fundamental inequity of a discriminatory housing practice is compounded by . . . interference"). Additionally, § 3617 has been interpreted to apply to FHA violators who are not defined explicitly within the statutory scheme. See U.S. v. Parma, 661 F.2d 562, 572 (6th Cir. 1981) (holding municipality liable under federal FHA because "the comprehensive purpose of the Act would be diluted if it were held to apply only to the actions of private individuals and entities").
Using this federal law instructively, it is appropriate to interpret § 34-37-5.1 of the FHPA similarly.[12] Section 34-37-5.1 of the Act provides protection to those individuals whose "right[s] granted or protected by this chapter" have been violated, and is, therefore, not limited in application to instances in which § 34-37-4, the provision of the *Page 17 
FHPA applicable to owners, also has been violated. See § 34-37-5.1. A different interpretation of § 34-37-5.1 of the FHPA would render it superfluous. See Rossi v. Employees' Retirement Sys. of the State ofR.I., 895 A.2d 106, at 112-13 (R.I. 2006) (requiring interpretation of statute so as not to render particular clause superfluous);Retirement Bd. of the Employees Retirement Sys. of R.I. v. DiPrete,845 A.2d 270, 279 (R.I. 2004) (presum[ing] that the General Assembly intended to attach significance to every word, sentence and provision of a statute") (citing Champlin's Realty Assocs., L.P. v. Tillson,823 A.2d 1162, 1165 (R.I. 2003)); see Stackhouse, 620 F. Supp. 2d at 210
(stressing "[w]henever possible, each provision of a legislative enactment is to be interpreted as meaningful and not surplusage") (citing Laufman v. Oakley Bldg. Loan Co., 408 F. Supp. 489, 498 (S.D. Ohio 1976). Thus, because this state's FHPA broadly protects individuals' equal opportunity to obtain housing accommodations free of discrimination, see § 34-37-1, the provisions which define specific "unlawful housing practices" do not constrain this Court's interpretation of § 34-37-5.1; it is legally permissible for the Commission to find that appellants discriminated against the Gaffneys even absent a violation of § 34-37-4.
Moreover, properly according significance to each sentence of §34-37-5.1 of the FHPA renders appellants' argument that it must be an "owner" to violate this section inapposite. See Rossi,895 A.2d at 112-13. This section is comprised of two clauses. See generally R.I.G.L. 1956 § 34-37-5.1. The former[13] casts a broad net to protect *Page 18 
against discrimination; the latter[14] applies specifically to owners and its agents. Id. As a result, this Court will interpret these clauses separately, assign separate meaning to each, and honor the FHPA's broad purpose: "safeguard[ing] the right of all individuals to equal opportunity in obtaining housing accommodations free of discrimination" to include a review of the Gaffneys' claim. See id. at § 34-37-1.
Because a "housing accommodation" is defined as "any building or structure or portion of any building or structure, or any parcel of land, developed or undeveloped, which is occupied or is intended, designed, or arranged to be occupied, or to be developed for occupancy, as the home or residence of one or more persons," it clearly falls within the purview of the FHPA. See id. § 34-37-3(7) (defining "housing accommodation"). The Gaffneys' property is a parcel of land that they intended to develop for their sons; therefore, the process of obtaining subdivision approval clearly is subject to the strictures of the FHPA. Accordingly, if appellants interfered with the Gaffneys' ability to use and enjoy their property by inappropriately protracting the subdivision approval process and ultimately denying them the approval with discriminatory intent, the Commission correctly found § 34-37-5.1 of the FHPA applicable to the Gaffneys' allegations. See U.S. v. City ofHayward, 36 F.3d 832, 835 (9th Cir. 1994) (citations omitted) ("The language `interfere with' has been broadly applied `to reach all practices which have the effect of interfering with the exercise of rights' under the federal fair housing laws."). As a result, this Court finds that the *Page 19 
Commission did not act in excess of its statutory authority in applying the FHPA to the Gaffneys' charge of discrimination.
 C Decision Affected By Error Of Law I Planning Board's Ability To "Waive" Frontage Requirement
In determining that the Gaffneys established a prima facie case of discrimination, the Commission concluded, in part, that the Gaffneys' property met basic subdivision qualifications. These minimum qualifications were inferred by the Planning Board's approval of the Gaffneys' pre-application sketch and preliminary plat. Additionally, the Commission found that appellants' reasons for denying the Gaffneys' subdivision request — lack of frontage and prohibition against private roads — were a pretext for discrimination, as the Subdivision Regulations could be waived by the Planning Board.
Appellants counter, however, that the Commission's decision is affected by error of law, asserting that the Planning Board has no power to waive such requirements. Rather, appellants argue that power to waive the frontage and public road requirements is vested solely in the Cumberland Zoning Board of Review.
The Town's Zoning Ordinance sets forth dimensional regulations consisting of, in part, a 100 foot minimum lot frontage[15]
requirement for residential lots with public sewer and water facilities. The Town's Subdivision Regulations similarly provide that "[a]ll lots shall front an existing or proposed public street . . . [and] have a minimum of one *Page 20 
hundred (100) feet of frontage." Subdivision Regulations, Section V, Article E, Item 1. Unfortunately, the subdivision proposed by the Gaffneys did not meet the frontage requirements set forth in the Zoning Ordinance or Subdivision Regulations. In fact, neither of the new lots proposed by the Gaffneys had any frontage at all. Additionally, the proposed right-of-way for the new lots was not intended for public use.
Although the proposed plans do not conform to the Subdivision Regulations, the regulations provide for flexibility under certain circumstances. See Subdivision Regulations, Section V, Article G. Specifically, the Town's Subdivision Regulations provide for deviation from the applicable standards in the following circumstances:
 [w]here strict adherence to these design standards is not feasible due to special conditions of the land or other features of the subdivision, or where in the Board's opinion such adherence would not allow for [the] best design, the Planning Board may vote to modify the requirements in Section V [which includes private streets and frontage], provided that such modification is not contrary to the general intent of these Regulations.
Subdivision Regulations, Section V, Article G. The ability of the Planning Board to vote to modify requirements, as permitted by Article G, consequently includes factors related to design, such as private street and frontage restrictions, which are defined in Section V.See id.; see also Subdivision Regulations, Section V, Article E. Although certain design requirements may be modified, however, it is important to recognize that Article G of Section V simultaneously places limits on the degree of modification. "Such modification shall not include the reduction of lot standards below the requirements of the Zoning Ordinance of the Town of Cumberland." Subdivision Regulations, Section V, Article G. This clause effectively limits the Planning Board's ability to modify lot requirements in circumstances where modification would cause the property to fall below the 100 foot minimum frontage and public street requirements of the Town's Zoning Ordinance.Id.; *Page 21 see also R.I.G.L. 1956 § 45-23-62 (permitting waiver if reasonable, "where the literal enforcement of one of more provisions of the regulations is impracticable and will exact undue hardship . . . or modification "is in the best interest of good planning practice and/or design as evidenced by consistency with the municipality's . . . zoning ordinance").
Thus, because the Gaffneys' plan, if approved by the Planning Board with modifications, would produce lots violating the Town's Zoning Ordinance, the Planning Board did not possess proper authority to allow the Gaffneys to deviate from the Subdivision Regulations. The Commission erroneously concluded otherwise.[16] As a result, the Commission's decision is affected by error of law. This case must be remanded to the Commission for proper consideration of this factor in evaluating whether appellants discriminated against the Gaffneys.
In connection with this remand, the Commission should consider the distinct roles of the Planning Board and Zoning Board in the subdivision approval process. In circumstances where a proposed subdivision violates both subdivision requirements and a municipality's zoning ordinance, R.I.G.L. 1956 § 45-23-61 is controlling as to the sequence of approvals to be garnered by the various bodies:
 [w]here an applicant requires both a variance from the local zoning ordinance and planning board approval, the applicant shall first obtain an advisory recommendation from the planning board, as well as conditional planning board approval for the first approval stage for the proposed project, which may be simultaneous, then obtain conditional zoning board relief, and then return to the planning board for subsequent required approval(s). *Page 22 
R.I.G.L. 1956 § 45-23-61(a)(1). Under § 45-23-61, the Gaffneys should have obtained an advisory Planning Board recommendation, conditional approval during the preliminary plat stage, and finally, conditional Zoning Board of Review relief, followed by a return to the Planning Board for official approvals. Id. It appears as though step two of the aforementioned process, obtaining conditional approval at the preliminary plat stage, is the only step that was completed by the Gaffneys.[17] Meeting Minutes, Cumberland Planning Board, August 18, 1992. This approval, however, was never made conditional upon receiving a variance from the Zoning Board, per the dictates of § 45-23-61(a)(1). The record lacks any indication that a variance was sought by the Gaffneys either during the planning stage or upon its appeal to the Zoning Board.[18]See generally Meeting Minutes, Cumberland Zoning Board, June 14, 1995.
Although the Gaffneys' efforts to follow the statutory procedure for obtaining both dimensional relief and subdivision approval were deficient, this Court recognizes that the record does not indicate that the Gaffneys were either aware of this procedure or apprised of its existence by appellants. Certain expectations, as follow, arise from contacts with the Planning Board:[19] *Page 23 
 [p]re-application meetings allow the applicant to meet with appropriate officials, boards and/or commissions, planning staff, and, where appropriate, state agencies, for advice as to the required steps in the approvals process, the pertinent local plans, ordinances, regulations, rules and procedures and standards which may bear upon the proposed development project.
R.I.G.L. 1956 § 45-23-35(a). "Pre-application discussions are intended for the guidance of the applicant and are not considered approval of a project or its elements." Id. at § 45-23-35(d). In determining whether the Gaffneys were discriminated against, the Commission may consider whether they sought or received guidance from appellants during the approval process. See id.
In addition, the Commission must properly analyze the liability of each appellant separately with respect to the Gaffneys' discrimination claim. The Planning Board and the Zoning Board are separate bodies having distinct responsibilities. See id. at § 45-23-51 (authorizing town's planning board to control subdivision projects pursuant to its own rules); see also id. at § 45-24-57(iv) (permitting zoning board of review to authorize variances); Slawson v. Zoning Bd. of Review,217 A.2d 92, 95 (R.I. 1966) (indicating "boards of review are not vested with jurisdiction to subdivide land"). The difference in duties between a planning and zoning board must be recognized — especially in the case at bar where the Zoning Board[20] is required to sit as the Subdivision Board of Review. See R.I.G.L. 1956 § 45-23-57 (requiring that zoning boards of review are established to hear appeals of decisions of planning board on subdivision matters); Subdivision Regulations, Section II, Article A (establishing Cumberland Zoning Board as Subdivision Board of Review); see also E.C. Yokley, Zoning Law Practice § 17-13 (4th ed. 2002) *Page 24 
(noting administrative character of review of subdivision decision in Rhode Island). It is in this capacity that the Zoning Board acted in reviewing the Gaffneys' appeal from the Planning Board's determination. Meeting Minutes, Cumberland Zoning Board of Review, June 14, 1995 (noting Gaffneys' presence at meeting "to present this appeal of the denial by the Planning Board for Subdivision Approval").
While acting as the Subdivision Board of Review, the Zoning Board retains the following powers:
 (1) To hear and decide appeals where it is alleged there is error in any order, requirement, decision or determination made by the Planning Board in the enforcement of the Regulations.
 (2) To hear and decide special exceptions to the terms of the Regulations upon which such Board of Review is authorized to pass.
 (3) To authorize, upon appeal in specific cases, such variance in the application of the terms of the Regulations as will not be contrary to the public interest where, owing to special conditions, a literal enforcement of the provisions of such regulations will result in unnecessary hardship and so that the spirit of the Regulations shall be observed and substantial justice done.
Subdivision Regulations, Section II, Article B. In exercising the aforementioned powers, the Zoning Board "may, in conformity with . . . the Regulations and in the proper exercise of its discretion, reverse or affirm wholly or partly or may modify the decision or determination as ought to be made and to that end shall have all the powers of the Planning Board from whom the appeal was taken." Subdivision Regulations, Section II, Article C. While rendering its decision, a zoning board cannot substitute its own judgment for that of the planning board; rather, it must consider the issue on the board's findings and record. R.I.G.L. 1956 § 45-23-70(a). Furthermore, "[a]ppeals from a decision . . . denying approval of a final plan shall be limited to the elements of the . . . *Page 25 
disapproval not contained in the decision reached by the planning board at the preliminary stage, providing that a public hearing has been held on the plan. . . ." Id. at § 45-23-66(a). A planning board's decision may only be reversed by a zoning board if it finds prejudicial procedural error, clear error, or lack of support by the weight of the evidence in the record. Id. at § 45-23-70(a).
The Commission must analyze the liability of the appellants in relation to the Gaffneys' discrimination claim in light of the duties outlined above.[21] It may not simply impute liability to the Zoning Board based on the Planning Board's activities, as the expectations for the Zoning Board's execution of its responsibilities differ substantially in character from the Planning Board's. Thus, upon remand, the Commission must consider the Gaffneys' discrimination claim in relation to the responsibilities vested in appellants by the applicable laws and their activities in tending to those responsibilities. It must determine whether, but for discriminatory intent, the Zoning Board would have reversed the Planning Board decision, granted the Gaffneys a variance (that they did not request), and allowed them to proceed with their requested subdivision.
 II Remedy Crafted By The Commission
Upon finding that the appellants discriminated against the Gaffneys, the Commission ordered that appellants either "[a]pprove the final plat subdivision plan . . . subject to the conditions discussed at Planning Board meetings," or alternatively, "[p]ay the [Gaffneys] all expenses incurred . . . preparing plans for the Planning Board, preparing for hearings, and attending hearings before the respondents, for all hearings *Page 26 
after the first hearing on October 15, 1990." In fashioning this remedy, appellants contend that the Commission acted beyond its statutory authority.
This Court recognizes that the Commission, in the event that it makes a finding of discrimination, is permitted to order appellants "to cease and desist from the unlawful housing practices, and to take such further affirmative or other action as will effectuate the purpose of this chapter." R.I.G.L. 1956 § 34-37-5(h)(1). "The commission may also order [appellants] to pay the [Gaffneys] damages sustained" as a result of the unlawful housing practices, "including reasonable attorney's fees incurred at any time in connection with the commission of the unlawful act and civil penalities. . . ." Id. at § 34-37-5(h)(2).
In ordering appellants to approve the Gaffneys' final subdivision plan subject to the conditions discussed at Planning Board meetings, the Commission erroneously suggests that the appellants had the authority to complete this action. The Planning Board, a party not named in the Commission's complaint, had the authority to approve a subdivision proposal. See Subdivision Regulations, Section III (outlining responsibilities of Cumberland Planning Board with respect to subdivision applications); see also Noonan v. Zoning Bd. of Review,159 A.2d 606, 608 (R.I. 1960) (recognizing "a board of review is without authority to divide or to regulate the subdivision of land); see alsoSlawson, 217 A.2d at 95 (indicating same). This Court recognizes that, while acting as the Subdivision Board of Review upon the Gaffneys' appeal, the Zoning Board possessed certain powers normally associated with the Planning Board's authority. In exercising its powers in an appellate capacity, the Zoning Board, "[could], in conformity with the provisions of the Regulations and in the proper exercise of its discretion," alter the *Page 27 
Planning Board's decision to reflect a decision that "ought to [have been] made . . . [using] all the powers of the Planning Board from whom the appeal was taken." . See Subdivision Regulation, Section II, Article A. Such a broad grant of discretion seemingly creates, if not in name, a "super" planning board. E. Grossman Sons, Inc. v. Rocha, 373 A.2d 496,500 (R.I. 1977).
If, however, the Zoning Board approved the Gaffneys' subdivision without first authorizing conditional approval of a variance, its actions may have been contrary to the applicable law, which sets forth the procedure to be followed by an applicant seeking both subdivision approval and a variance.[22] Moreover, in approving the subdivision plan, the Zoning Board might have violated the Subdivision Regulations regarding frontage and public streets, which is not permitted by the rules governing its operations. See Subdivision Regulations, Section II, Article C (requiring Zoning Board to act "in conformity with the Subdivision Regulations"). Finally, the Gaffneys did not formally request a variance. See Subdivision Regulations, Section II, Article D, Item 2 (stating "[a]pplication for special exceptions or variances shall be filed with the Board of Review in the manner prescribed by the rules of the Board of Review"). As a result, the Zoning Board may or may not have been acting within its "discretion" in exercising its appellate *Page 28 
powers to grant a variance which was not properly before it.[23]See Subdivision Regulations, Section II, Article C (permitting alteration of Planning Board's decision "in conformity with . . . the Regulations and in the proper exercise of its discretion).
In creating the first of the two alternative remedies — that of requiring appellants to grant subdivision approval — the Commission presupposed that this remedy was legally proper in light of the Zoning Board's authority. As the Commission made an error of law, as found previously by this Court, this remedy was also affected by legal error. Moreover, it is unclear under what authority the Commission could award this remedy, particularly where the Gaffneys failed to appeal the final zoning decision. This aspect of the remedy, therefore, must be addressed further by the Commission on remand.
The second of the two alternative remedies also may have been affected by the Commission's error of law. This aspect of the remedy must be addressed on remand as well. It is true, however, that upon finding that unlawful housing practices have occurred, the Commission may "order . . . damages . . . including reasonable attorney's fees incurred at any time in connection with the commission of the unlawful act. . . ." R.I.G.L. 1956 § 34-37-5(h)(2).
 IV Conclusion
After a review of the entire record, this Court finds that the Commission's decision is affected by error of law. For the reasons set forth herein, the Decision and *Page 29 
Order of the Commission is thus reversed and remanded for reconsideration in light this Decision.[24] This Court will retain jurisdiction of any subsequent appeal.
[1] The portion of the minutes from the October 18, 1994 Planning Board meeting that are contained in the record do not reflect the Board's vote; however, the minutes in the later February 21, 1995 Planning Board meeting, at which the Planning Board voted to reconsider the Gaffneys' proposal at the final plat stage, reflect the Board's earlier denial of final plat approval.
[2] This Court takes notice of the fact that between the original filing of the Gaffneys' first pre-application sketch in 1990 and the denial of final plat approval in 1995, the composition of the 15 member Planning Board changed significantly. It appears that only 2 members of the original 15 present in 1990 remained members of the Planning Board.See Tr. at 100, lines 22-23.
[3] As of April 18, 1995, the date on which the Gaffneys filed a charge with the Commission, the Zoning Board had not rendered its decision. The Zoning Board rendered its decision on June 14, 1995. Its decision was considered in the Commission's assessment of the Gaffneys' discrimination claim at its August 23, 2000 hearing and in its June 5, 2001 decision.
[4] The instant action names A. Robert Mailloux, Finance Director for the Town of Cumberland, as an appellant. It is a generally accepted principle that a suit brought against a state official acting in his official capacity equates to a suit against the state. See CapitalProperties, Inc. v. State, 749 A.2d 1069, 1081 (R.I. 1999). It follows, then, that a suit brought against an official of a municipality, such as a finance director, in his official capacity, translates into a suit against the municipality. See Feeney v. Napolitano, 825 A.2d 1 (R.I. 2003) (effectively treating lawsuit against treasurer as lawsuit against town).
As a result, the identity of such official is interchangeable, as the successor individual will be responsible for executing the same duties as his predecessor upon judgment against the municipality. See Richmondv. Kettelle, 106 A. 292, 299 (R.I. 1919) (recognizing "mere fact that there has been a change in the person holding the office does not destroy the effect of the thing adjudged" in contemplating a current treasurer's satisfaction of a judgment made before he took office). Therefore, the fact that appellants named A. Robert Mailloux as an appellant in the place of George Cross is irrelevant. Neither the Commission's complaint nor its June 5, 2001 Decision and Order indicate that the George Cross was charged or found liable in his individual capacity with respect to the Gaffneys' discrimination claim.
[5] During the pendency of this appeal, the parties engaged in protracted settlement discussions Court.
[6] Appellee Henry Blaine Gaffney died in 2002, leaving Charlene Gaffney, the Commission, and its Commissioners, as appellees.
[7] A decision of the Zoning Board may be appealed to this Court, as directly authorized by R.I.G.L. 1956 § 45-23-71. Again, the Gaffneys filed no such appeal but chose instead to attack the decisions of the Planning Board and Zoning Board through the filing of a charge of discrimination with the Commission.
[8] The Gaffneys, however, are precluded from directly challenging the merits of the Zoning Board of Review's ultimate decision in this Court.See R.I.G.L. 1956 § 45-23-71. The Gaffneys did not file an appeal with the Superior Court within the twenty-day period required by law.Id. For that reason, the Zoning Board of Review's June 14, 1995 decision is deemed final. See Town of Richmond v. Wawaloam Reservation,Inc., 850 A.2d 924 (R.I. 2004) (stating failure to appeal unfavorable zoning board of review decision renders such decision final). This Court will proceed to analyze appellants' claims as they pertain to the Commission's decision.
[9] See, e.g., Rossi v. Employees' Retirement Sys. of the State ofR.I., 2006 R.I. LEXIS 46, C.A. No. 2004-364 M.P. (R.I. Supreme Ct. Apr. 14, 2006) (noting "[a]lthough factual findings of an administrative agency are afforded great deference, a dispute involving statutory interpretation is a question of law to which [the courts] apply denovo review.") (citing In re Advisory Opinion to the Governor,732 A.2d 55, 60 (R.I. 1999); City of East Providence v. Public UtilitiesComm'n, 566 A.2d 1305, 1307 (R.I. 1989)).
[10] See Goodman v. Turner, 512 A.2d 861 (R.I. 1986) (finding question involving statutorily created condition precedent to suit can be raised by parties or court at any time).
[11] Federal cases suggest that § 3617 of the federal FHA has been held applicable in three circumstances:
 (1) in the exercise or enjoyment of any right protected by [those sections of the Act relating to discrimination in the sale or rental of housing, residential real estate-related transactions, or the provision of brokerage services]; (2) on account of the person's having exercised or enjoyed such a right; and (3) on account of his having aided or encouraged any other person in the exercise or enjoyment of such a right.
Stackhouse v. DeSitter, 620 F. Supp. 2d 208, 210 (N.D. Ill. 1985).
[12] Interpreting § 34-37-5.1 of the FHPA in the same fashion as § 3617 of the federal FHA makes it applicable in the following situations: (1) in an individual's exercise or enjoyment of any right protected under Chapter 37, the Rhode Island Fair Housing Practices Act; (2) on account of an individual having exercised or enjoyed such a right; and (3) on account of an individual's having aided or encouraged any other person in the exercise or enjoyment of such a right.
Appellants ask this Court to interpret § 34-37-5.1 of the FHPA as requiring a violation of § 34-37-4 before liability may be imposed under § 34-37-5.1. This Court, however, will not interpret § 34-37-5.1 as requiring that a party specifically commit an "unlawful housing practice[,]" as defined in § 34-37-1 before liability under § 34-37-5.1
is triggered.
[13] "It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of . . . any right granted or protected by this chapter." R.I.G.L. 1956 §34-37-5.1.
[14] "No owner under this chapter or any agent of these shall discriminate in any manner against any individual because he or she has opposed any practice forbidden by this chapter, or because he or she has made a charge, testified, or assisted in any manner in any investigation, proceeding, or hearing under this chapter." R.I.G.L. 1956 § 34-37-5.1.
It is this portion of the FHPA that appellants contend they could not have violated because they are not owners, or persons having "the right to sell, rent, lease, or manage a housing accommodation." Id. at §34-37-3(11). This provision fails to aid appellants' case, for it relates to retaliation by owners against individuals pursuing remedies under the FHPA. As such, it will not be addressed further by this Court.
[15] The Cumberland Zoning Ordinance defines lot frontage as "[t]hat portion of a lot abutting a street." A street is defined as a "public right-of-way established by or maintained under public authority, a private way open for public uses, and a private way plotted or laid out for ultimate public use, whether or not constructed." The Code of Ordinances, Town of Cumberland, Appendix B — Zoning, § 10-1.
[16] This error of law highlights the danger of the Commission treading in the unfamiliar waters of zoning law in the course of addressing a discrimination claim.
[17] The Gaffneys' subdivision proposal was denied at the final plat stage for the first of two times at the Cumberland Planning Board meeting of April 19, 1994. It was denied, in part, because the Gaffneys failed to return to the Planning Board after the six-month deadline. Meeting Minutes, Cumber land Planning Board, April 19, 1994. In a second attempt to obtain subdivision approval, the Gaffneys returned to the Planning Board in July of the same year and obtained preliminary plat approval. Meeting Minutes, Cumberland Planning Board, July 19, 1994.
[18] If a variance in the application of the terms of the Subdivision Regulations is sought from the Zoning Board, such an application must be filed with the Zoning Board pursuant to its rules. See Subdivision Regulations, Section II, Article D, Item 2; see also Goodman v.Beatrice, 1986 R.I. Super. LEXIS 59, at *8 (acknowledging necessary pursuit of subdivision before planning board prior to applying for variance relief from zoning board).
[19] Neither the Planning Board nor individual members of the Zoning Board were named in the Gaffneys' complaint to the Commission.
[20] The meeting minutes of the Cumberland Zoning Board meeting of June 14, 1995 indicate that the following five board members were present: Chairperson Theresa McMichael, Jack Costa, Carolyn A. Connors, Edmond McGrath, and Daniel P. Connors.
[21] As discussed above, this Court will not review the final decision of the Zoning Board based on the doctrine of administrative finality.
[22] Recall that § 45-23-61 outlines the procedure to be followed for applicants seeking both subdivision permission and dimensional relief. This provision states:
 [w]here an applicant requires both a variance from the local zoning ordinance and planning board approval, the applicant shall first obtain an advisory recommendation from the planning board, as well as conditional planning board approval for the first approval stage for the proposed project, which may be simultaneous, then obtain conditional zoning board relief, and then return to the planning board for subsequent required approval(s).
R.I.G.L. 1956 § 45-23-61.
[23] Because the decision of the Zoning Board became final when the Gaffneys opted not to appeal it to this Court, this Court will neither make a determination as to the propriety of its decision, nor permit the Commission to determine the same.
[24] This Court reluctantly orders a remand, as the legal error of the Commission, in this Court's view, precludes a determination on the state of the existing record as to whether the Commission would have found discrimination had it not committed legal error. There is no question that the Gaffneys were forced to undergo a protracted subdivision approval process, and the expenses associated with it, and that they were treated unfairly by the Planning Board. The Gaffneys addressed many of the concerns of the Planning Board and seemingly satisfied those concerns, only to have them emerge as some of the reasons for denial of their requested subdivision approval. Whether the denial was a pretext for discrimination and whether any such discrimination affected the Zoning Board decision remain issues for the Commission to decide on remand. Whether absent discrimination, the Zoning Board would have or could have granted subdivision approval, without a requested variance by the Gaffneys, also remains for decision.
In light of the convoluted procedural history of this case and the questions remaining, the parties may wish to agree that the applicant may pursue the subdivision approval process anew in tandem with a requested variance. While this Court cannot compel this course of action, it would be a way to avoid further protracted litigation and expense to all parties and would address the ultimate issue. Arguably, the extensive passage of time, the course of the intervening discrimination litigation and the manner in which the case was handled before the Planning Board and Zoning Board would make any application filed today (which presumably would include a request for conditional Planning Board relief, conditional Zoning Board relief, and a requested variance) reflective of a substantial and material change of circumstances intervening between the denial of the applicants' subdivision application in 1995 and today that would make a renewed application proper. See May-Day Realty Corp. v. Board of Appeals ofPawtucket, 107 R.I. 235, 237, 267 A.2d 400, 401-02 (1970).